IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GEICO GENERAL INSURANCE COMPANY, | § § § | No. 107, 2021 |
| | § § | Court Below – Superior Court of the State of Delaware |
| Defendant Below, Appellant/Cross-Appellee, | § § § | |
| | § | C.A. No. N17C-03-242 |
| v. | § § | |
| YVONNE GREEN and REHABILITATION ASSOCIATES, P.A., on behalf of themselves and all others similarly situated, | § § § § § § | |
| Plaintiffs Below, Appellees/Cross-Appellants. | § § § § § | |
| YVONNE GREEN and REHABILITATION ASSOCIATES, P.A., on behalf of themselves and all others similarly situated, | § § § § § | No. 166, 2021 Court Below – Superior Court of the State of Delaware |
| Plaintiffs Below, Appellants/Cross-Appellees, | § § § § | C.A. No. N17C-03-242 |
| v. | § § | |
| GEICO GENERAL INSURANCE COMPANY, | § § § § | |
| Defendant Below, Appellee/Cross Appellant. | § § | |

Submitted: January 19, 2022
Decided: April 8, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting the Court *en banc*.

Upon appeal from the Superior Court. **AFFIRMED IN PART AND REVERSED IN PART.**

Paul A. Bradley, Esquire, Stephanie A. Fox, Esquire, MARON MARVEL BRADLEY ANDERSON & TARDY LLC, Wilmington, Delaware; Laura A. Cellucci, Esquire (*argued*), Joshua F. Kahn, Esquire, MILES & STOCKBRIDGE P.C., Baltimore, Maryland; George M. Church, Esquire, Cockeysville, Maryland; Meloney Perry, Esquire, PERRY LAW P.C., Dallas, Texas; *for GEICO General Insurance Company*.

Richard H. Cross, Esquire (*argued*), Christopher P. Simon, Esquire, Michael L. Vild, Esquire, CROSS & SIMON, LLC, Wilmington, Delaware; *for Yvonne Green and Rehabilitation Associates*.

**MONTGOMERY-REEVES**, Justice:

This appeal involves a challenge to how Geico General Insurance Company ("GEICO") processes insurance claims under 21 *Del. C.* § 2118. Section 2118 provides that certain motor vehicle owners must obtain personal injury protection ("PIP") insurance. Under this statute, insurance companies must, subject to a two-year limitation period, compensate insureds for reasonable and necessary expenses for injuries resulting from a motor vehicle accident. GEICO provides PIP insurance to Delawareans under this statute. The plaintiffs below, all of whose claims for medical expense reimbursement under a PIP policy have been denied, in whole or in part, are either GEICO PIP policyholders who were injured in automobile accidents or their treatment providers.

The plaintiffs below allege that GEICO uses two automated processing rules that arbitrarily deny or reduce payments without consideration of the reasonableness or necessity of submitted claims and without any human involvement. The plaintiffs below argue that GEICO's use of the automated rules to deny or reduce payments (1) breaches the applicable insurance contract, (2) amounts to bad faith breach of contract, and (3) violates Section 2118. In the court below, they sought damages and a declaratory judgment that GEICO's use of the automated rules violates Section 2118. GEICO argues that its use of the automated rules does not violate any contract or law because the automated rules account for the reasonableness and necessity of

3

medical expenses and make recommendations that go to GEICO's trained adjusters who further assess the reasonableness and necessity of the expenses and then adjust claims in their discretion.

The court below decided multiple motions filed by the parties, but this Opinion addresses only two of those decisions. First, the Superior Court granted in-part and denied in-part GEICO's motion to dismiss. Relevant to this appeal, GEICO challenges the court's ruling that the judiciary has the authority to issue a declaratory judgment regarding a violation of the insurance code.

Second, the parties filed separate motions for summary judgment. The Superior Court entered judgment in favor of GEICO on the contract claims and declaratory judgment in favor of the plaintiffs below. The plaintiffs below appeal the court's ruling as to the breach of contract and bad faith breach of contract claims, and GEICO appeals the court's issuance of a declaratory judgment that it violated Section 2118.

Having reviewed the parties' briefs and the record on appeal, and after oral argument, the Court affirms the Superior Court's ruling that the judiciary has the authority to issue a declaratory judgment that GEICO's use of the automated rules violates Section 2118. We also affirm the Superior Court's judgment as to the breach of contract and bad faith breach of contract claims. We conclude, however, that the

4

issuance of the declaratory judgment was improper. Thus, we AFFIRM in part and REVERSE in part.

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A. The Parties

#### 1. Plaintiffs Below

On September 12, 2011, Yvonne Green, plaintiff below and class representative for the insured class, was injured in an automobile accident in Delaware.[1] Green was a Delaware resident at the time of the accident and had PIP coverage through GEICO.[2] She filed a claim under her policy, and her providers submitted their medical bills directly to GEICO.[3] While GEICO paid most of Green's medical expenses in full, a number of her claims for expenses were reduced or denied.[4]

Rehabilitation Associates, P.A. ("RA") (collectively with Green, the "Claimants"), plaintiff below and class representative for the claimant class, is a medical center that provides treatment to people who have PIP coverage through GEICO.[5] From March 10, 2011, to the time the complaint was filed below, RA

---

[1] App. to GEICO's Opening Br. 119, 460-61 (hereinafter, "A__").
[2] *Id.* at 461.
[3] *Id.* at 462.
[4] *Id.*
[5] *Id.* at 121-22, 462.

submitted medical bills to GEICO for processing and reimbursement.[6] RA alleges that GEICO has denied payment of their submitted bills.[7]

### 2.    Defendant Below

GEICO, defendant below, is an insurance company incorporated in Maryland with its principal place of business in Washington, D.C.[8] GEICO sells insurance in Delaware and underwrites motor vehicle insurance, including PIP insurance, for persons who are injured while driving or occupying an automobile.[9]

### B.    Delaware's Personal Injury Protection Statute

Under 21 *Del. C.* § 2118, owners of motor vehicles registered in the State must obtain PIP insurance.[10] Under Section 2118(a)(2), insurance companies must "[c]ompensat[e] . . . injured persons for reasonable and necessary expenses" incurred because of bodily injury arising out of the use of a vehicle.[11]

Section 2118B governs the processing and payment of PIP benefits. When a covered person is injured in a motor vehicle accident and notifies the insurer of his or her intent to submit a claim, "the insurer shall, no later than 10 days following the insurer's receipt of said notification, provide that claimant with a form for filing such

---

[6] *Id.*
[7] *Id.* at 122.
[8] *Id.* at 104.
[9] *Id.* at 104-05.
[10] Those who are self-insured pursuant to 21 *Del. C.* § 2904 are exempt from Section 2118's requirement for insurance coverage. This exception is not relevant to this appeal.
[11] 21 *Del. C.* § 2118(a)(2).

a claim."[12]  After the insured submits the claim, "the insurer shall promptly process the claim" and, within thirty days, either pay reasonable and necessary expenses or provide the insured with an explanation for a denial of the claim.[13]  If the insurer does not pay the PIP benefits within the thirty-day period, the statute mandates that the insurer pay an interest penalty on the amount of unpaid benefits due to the insured.[14]  Section 2118B was enacted to "ensure reasonably prompt processing and payment of sums owed by insurers to their policyholders and other persons covered by their policies pursuant to § 2118 of this title, and to prevent the financial hardship and damage to personal credit ratings that can result from the unjustifiable delays of such payments."[15]

## C.    The Rules

When GEICO receives a PIP claim for payment of medical expenses from either the insured or the insured's treatment provider, GEICO first determines whether there is a causal connection between the motor vehicle accident and the complained of injury.[16]  Once that connection is confirmed, GEICO determines how much of the PIP claim it will pay to the claimant.  In making this payment determination, GEICO utilizes two automated rules, the Geographic Reduction Rule

---

[12] *Id.* at § 2118B(b).
[13] *Id.* at § 2118B(c).
[14] *Id.*
[15] *Id.* at § 2118B(a).
[16] App. to Claimants' Answering Br. and Opening Br. 69, 76 (hereinafter, "B__").

(the "GRR") and the Passive Modality Rule (the "PMR") (collectively, the "Rules").[17]

### 1. The Geographic Reduction Rule

GEICO utilizes the GRR with respect to the reasonableness of a PIP claim.[18] The GRR first finds the Current Procedural Terminology (the "CPT") code for the claimant's treatment.[19] The CPT is "a universal code assigned to each treatment procedure."[20] For example, all office visits are assigned CPT code 99213.[21] The GRR then gathers information on the treatment's CPT code from its database, which contains submitted bills from all claimants.[22] The database stores:

> (i) information on the date of the procedure; (ii) CPT code; (iii) the amount charged by the medical provider; (iv) the geographic location of the provider (using the first three digits of the zip code ("GeoZIP")); and, (v) the type of provider (which is [] broken down in three broad categories – doctors, chiropractors and physical therapists).[23]

---

[17] GEICO's Opening Br. 8 (hereinafter, "GEICO Opening Br.__").
[18] GEICO Opening Br. 9; *see* Claimants' Answering Br. and Opening Br. 12 (hereinafter, "Claimants Opening Br.__").
[19] GEICO Opening Br. 9; *see* A686-94.
[20] GEICO Opening Br. 9; *see* GEICO Opening Br. Ex. D, at 10 (hereinafter, "SJ Op.__") ("Each procedure performed by a medical provider is billed using a Current Procedural Terminology code ('CPT Code') identifier—a universal code assigned to each treatment procedure."); Claimants Opening Br. 11.
[21] GEICO Opening Br. 9.
[22] *Id.* at 9-10; *see* A686-87; Claimants Opening Br. 11; SJ Op. 10 ("GEICO has a database that contains all bills submitted by all claimants and is updated every six months.").
[23] SJ Op. 10; *see* GEICO Opening Br. 11; Claimants Opening Br. 11.

Thus, the GRR considers multiple factors of reasonableness, including the average charge of medical providers, the type of treatment, the geographic region, and the type of provider. The GRR then uses that information to arrange provider charges for the identified CPT code from the lowest amount to the highest amount.[24] Next, the GRR identifies the amount equal to the eightieth percentile of all charges from the identified CPT code and categorizes all submitted claims under and up to that amount as reasonable and thus payable.[25] Any claims with treatment costs over the eightieth percentile receive partial payment up to the eightieth percentile amount.[26]

GEICO first decided to use the GRR in the early 1990s and at that time "determined that the 80th percentile was the industry standard."[27] Since 1994, GEICO has used three different databases for the GRR: Medata, Fair Isaac/Mitchell, and FAIR Health, Inc.[28] These data processing systems "compare[] the submitted medical charges to the charges of other providers in the same geographic area by CPT code and date of service."[29] GEICO's determination that the eightieth percentile was reasonable was also made in reliance on Medata's manuals, which

---

[24] SJ Op. 10; *see* GEICO Opening Br. 9; Claimants Opening Br. 11.
[25] GEICO Opening Br. 9; *see* A686-94; Claimants Opening Br. 11-12; SJ Op. 10 ("GEICO sorts the claims from lowest amount to highest amount and [sic] amount that is at the 80th percentile in the linear stack is the maximum amount that GEICO will pay for a given CPT code.").
[26] *Id.*
[27] GEICO Opening Br. 11; *see* A1793-1812, 1872-76; SJ Op. 11 ("GEICO apparently implemented the GRR in the 1990s.").
[28] GEICO Opening Br. 10; *see* A686-94.
[29] GEICO Opening Br. 10; *see* A686-94, 698-703.

defined "reasonable" as "'the 80th percentile of actual charges in the provider's socio-demographic area.'"[30]

## 2. The Passive Modality Rule

With respect to the medical necessity of medical expenses, GEICO utilizes the PMR.[31] GEICO does not consider certain passive treatments to be necessary once an injury is outside the acute phase.[32] "To be medically necessary, treatment must be indispensable and not just for comfort or convenience."[33] GEICO considers an injury to be outside the acute phase eight or more weeks after the injury.[34] As such, "[t]he PMR flags certain treatments (e.g., ultrasound, hot/cold packs, electrical stimulation, etc.) as providing no therapeutic benefit eight weeks after the injury (i.e. when an injury becomes chronic)."[35] If the PMR flags a treatment as providing no therapeutic benefit, the database recommends denying payment.[36] In other words, the PMR determines that certain passive treatments are not necessary eight weeks after the injury.

---

[30] GEICO Opening Br. 11; A925; *see* Claimants Opening Br. 13; SJ Op. 11.
[31] GEICO Opening Br. 12.
[32] *Id.*; *see* A861-62; Claimants Opening Br. 16.
[33] GEICO Opening Br. 12.
[34] *Id.*; *see* A861-62; Claimants Opening Br. 16; SJ Op. 11 ("GEICO utilizes the PMR to review PIP claims submitted for passive treatment that occur more than eight weeks after an accident.").
[35] GEICO Opening Br. 12; *see* A520-22, 861-62.
[36] GEICO Opening Br. 12; *see* A520-22, 861-62; Claimants Opening Br. 16-17; SJ Op. 11.

10

GEICO adopted the PMR in 1996 "after it was analyzed and vetted by Medata."[37] GEICO relied on peer reviewed medical literature, including scientific studies and medical guidelines in implementing the PMR.[38]

### D.      The PIP Claims Adjustment Process

The GRR and PMR's recommendations are not dispositive.[39]   GEICO employs licensed claims adjusters to consider the reasonableness and necessity of submitted claims.[40]  Once the GRR and PMR render a recommendation, the adjusters have an "obligation and the authority to adjust claims . . . ."[41]  GEICO's adjusters "evaluate reasonableness and necessity of a claim and, where circumstances warrant, issue additional payment in response to a request for re-evaluation."[42]

Once GEICO determines how much of the submitted claim it will pay, it sends the insured and the provider an Explanation of Review (an "EOR"), which "identifies the treatment rendered, the amount of the bill, the amount of the payment and a written explanation for any reduction or denial."[43]  All EORs establish the procedure for re-evaluation of the payment amount and provide re-evaluation

---

[37] GEICO Opening Br. 12; *see* A384-85.
[38] GEICO Opening Br. 12; *see* A384, 861-77, 913-21.
[39] GEICO Opening Br. 12; *see* A460-64, 849-56.
[40] GEICO Opening Br. 13; *see* A1443-44, 1446-55.
[41] GEICO Opening Br. 12; *see* SJ Op. 40 ("[A]djusters were ultimately given discretion . . . .").
[42] GEICO Opening Br. 12; *see* A927-45, 1320-21, 1341-45; Claimants Opening Br. 35-36.
[43] A462; *see* GEICO Opening Br. 8.

criteria, should the insured or provider wish to challenge GEICO's payment determination.[44]

### E. Procedural History

On March 20, 2017, the Claimants filed a class action suit in the Superior Court against GEICO.[45] In the action, the Claimants alleged that GEICO violated statutory and common law, bringing claims for breach of contract, bad faith breach of contract, declaratory relief, and Deceptive Trade Practices Act violations on behalf of themselves and all others whose PIP benefits claims were denied in whole or in part because of the Rules.[46]

On July 12, 2017, the Claimants filed a first amended class action complaint (the "Class Action Complaint") asserting the following four counts. First, the Claimants alleged that GEICO breached certain provisions of its PIP insurance contract by "reducing or denying payment of covered claims for PIP benefits through the use of the [R]ules" ("Count I").[47] Second, the Claimants contended that GEICO committed bad faith breach of contract because it "knowingly and intentionally violated the applicable policies of insurance and applicable law by performing arbitrary and improper bill reductions and denials, without justification" ("Count

---

[44] GEICO Opening Br. 8; *see* A463.
[45] SJ Op. 13.
[46] *Id.*
[47] A123-24.

II").[48]  Third, the Claimants sought a declaratory judgment that "(i) GEICO has violated 21 Del. C. § 2118; and [that] (ii) GEICO may not lawfully use the Geographic Reduction Rule or Passive Modality Rule" ("Count III").[49]  Fourth, RA argued that GEICO violated the Deceptive Trade Practices Act, 6 *Del. C.* § 2532(a)(5) and (12), by failing to disclose its use of the GRR and PMR and to investigate claims (Count IV).[50]

On August 1, 2017, GEICO filed a motion to dismiss the Class Action Complaint.[51]  In relevant part, GEICO alleged that Count III must be dismissed because, under *Clark v. State Farm Mutual Automobile Insurance Co.*,[52] "the Delaware judiciary does not have the authority to enforce violations of the insurance code, rather, that authority is vested with the General Assembly and the Insurance Commissioner."[53]  In response, the Superior Court issued an opinion dismissing Count IV, but allowing Counts I, II, and III to remain.[54]  On appeal, GEICO challenges the Superior Court's ruling as to its authority to issue the Claimants' requested declaratory judgment.

---

[48] *Id.* at 124-25.
[49] *Id.* at 125-26.
[50] *Id.* at 126-28.
[51] SJ Op. 14.
[52] 131 A.3d 806 (Del. 2016).
[53] GEICO Opening Br. Ex. A, at 17 (hereinafter, "Dismiss Op.__").
[54] SJ Op. 14.

On January 3, 2019, GEICO filed a motion for summary judgment on Counts I, II, and III, which the Superior Court stayed until after it decided the Claimants' motion for class certification.[55] After the court granted the motion for class certification, the Claimants also filed a motion for summary judgment.[56] In its summary judgment opinion, issued on March 24, 2021, the Superior Court entered summary judgment in favor of GEICO on Counts I and II.[57] The Claimants challenge these rulings on cross-appeal.[58] As to Count III—the declaratory judgment count—the Superior Court ruled in favor of the Claimants, holding that the Rules violate 21 *Del. C.* §§ 2118(a)(2) and 2118B(c).[59] GEICO challenges this ruling on appeal.[60]

## II.  STANDARD OF REVIEW

On appeal, we review a trial court's "rulings on motions to dismiss pursuant to Rule 12(b)(6) and motions for summary judgment *de novo*."[61] A motion to dismiss may be granted where "the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[62] A motion for summary

---

[55] *Id.*

[56] *Id.*

[57] *See id.* at 48.

[58] Claimants Opening Br. 41-53.

[59] SJ Op. 39.

[60] GEICO Opening Br. 23-37.

[61] *Ramirez v. Murdick*, 948 A.2d 395, 399 (Del. 2008).

[62] *Central Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

judgment is only properly granted when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law."[63]

## III.  ANALYSIS

In this appeal, we consider the following questions: (1) whether GEICO's use of the Rules breaches the PIP insurance contract; (2) whether GEICO's use of the Rules constitutes bad faith breach of contract; and (3) whether the Superior Court erred in issuing a declaratory judgment that GEICO's use of the Rules violates Sections 2118 and 2118B.[64]

### A.  GEICO's Use of the Rules Does Not Breach the PIP Contract

Under Delaware law, plaintiffs must establish the following three elements to succeed on a breach of contract claim: (1) the existence of a contract, whether express or implied; (2) breach of one or more of the contract's obligations; and (3) damages resulting from the breach.[65]

Claimants allege that GEICO breached its form Delaware Family Automobile Insurance policy ("PIP Insurance Policy" or the "Policy") by (1) failing to comply with its common law and statutory requirement to investigate insurance claims,

---

[63] Del. Super. Ct. Civ. R. 56(c).

[64] The parties presented two other questions in their opening briefs. First, GEICO appealed the Superior Court's certification of the class. Second, the Claimants appealed the Superior Court's denial of their motion for relief related to declaratory judgment. Because we reverse the Superior Court's determination that GEICO's use of the Rules violates Section 2118 and 2118B, we need not reach these arguments.

[65] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

which Claimants argue the parties incorporated into the contract, and (2) improperly imposing a sublimit, cap, or percentage reduction that the insureds did not consent to in a signed written document, as Delaware Insurance Regulation 603 ("Regulation 603") requires.[66]

### 1. The Claimants fail to show that GEICO's use of the Rules violates a contractual obligation

Under the PIP Insurance Policy, GEICO is obligated to pay the "Medical expenses" of the injured person.[67] The Policy defines "Medical expenses" as "reasonable expenses for necessary medical, hospital, dental, surgical, x-ray, ambulance and professional nursing services, prosthetic devices, and treatment by recognized religious healers."[68] Thus, the Policy requires GEICO to pay reasonable and necessary medical expenses.

The Policy also provides that "[a]ny terms of this policy in conflict with the statutes of Delaware are amended to conform to those statutes" (the "Incorporation Provision").[69] According to the Claimants, the Incorporation Provision means that "Delaware statutory law is therefore expressly incorporated into GEICO's contracts."[70] In particular, the Claimants allege that the following Delaware

---

[66] Claimants Opening Br. 41-53.
[67] B13.
[68] *Id.*
[69] *Id.* at 28.
[70] Claimants Opening Br. 48.

16

common law and statutory laws are incorporated into the contract: (1) the Delaware common law requirement that "insurer[s] perform a proper investigation of a claim before denying it" [71] and (2) 18 *Del. C.* §§ 2303 and 2304(16),[72] which require insurers to "perform an investigation based on all available information and to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies."[73]

GEICO responds, and the Superior Court agreed, that the Claimants' argument must fail because the Incorporation Provision is only implicated when the Policy conflicts with Delaware law and the Claimants do not specify a provision that does so.[74] We reach the same conclusion.

The Incorporation Provision states that the Policy will be amended to conform to Delaware law if any terms of the Policy "*conflict*" with Delaware law.[75] In other words, the Incorporation Provision first requires the Claimants to identify a

---

[71] *Id.* at 46.
[72] 18 *Del. C.* §§ 2301-2320 is the Delaware Unfair Trade Practices Act of the Insurance Code. Section 2304(16) prohibits insurers from having a general business practice of "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information." Section 2303 states that "[n]o [insurer] shall engage in this State in any trade practice which is defined in this chapter as, or determined pursuant to this chapter to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."
[73] Claimants Opening Br. 48.
[74] GEICO's Reply Br. and Answering Br. 32 (hereinafter, "GEICO Answering Br.__"); SJ Op. 21 ("By not specifying a particular provision that conflicts with Delaware law, Plaintiffs essentially argue that all Delaware law should be incorporated into the contract. The absence of a provision does not mean that there is a conflict warranting reformation.").
[75] B28 (emphasis added).

provision in the Policy that is "different, opposed, or contradictory" to Delaware law.[76] They have not done so. The Policy only obligates GEICO to pay reasonable and necessary medical expenses.[77] It does not specify *how* GEICO must make that determination. Thus, even if we assume *arguendo* the Claimants' assertion that there exists a common law duty for insurers to investigate all claims in a proper manner,[78] and even if 18 *Del. C.* § 2304 contained a private right of action,[79] nothing in the

---

[76] *Conflict*, Merriam-Webster, https://www.merriam-webster.com/dictionary/conflict (last visited Feb. 18, 2022); *see also Conflict*, Oxford English Dictionary, https://www.oed.com/view/Entry/38899?rskey=OJTWEa&result=2&isAdvanced=false#e id (last visited Mar. 29, 2022) (defining "conflict" as "[t]o come into collision, to clash; to be at variance, be incompatible"); *Conflict*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/conflict (last visited Mar. 29, 2022) (defining "conflict" as "to be in active disagreement, as between opposing opinions or needs").

[77] B13.

[78] We do not decide in this opinion whether that duty exists.

[79] It would be difficult to conclude that the parties intended to incorporate § 2304 into the Policy when the Delaware Unfair Trade Practices Act does not create a private right of action. 18 *Del. C.* § 2301, *et seq.* "Under the Act, only the Insurance Commissioner has authority to examine and investigate alleged bad faith acts and file claims against 'any such person [who] has been engag[ed] . . . in any unfair or deceptive act or practice, whether or not defined in § 2304.'" *Davidson v. Travelers Home and Marine Ins. Co.*, 2011 WL 7063521, at *2 (Del. Super. Ct. Dec. 30, 2011) (citing 18 *Del. C.* § 2307(a)). This outcome is supported by *Johnson v. Gov't Emps. Ins. Co*., a case where the plaintiff brought a breach of contract claim against GEICO on a theory that the policy incorporated Section 2304. 2014 WL 2708300, at *1 (D. Del. June 16, 2014). The plaintiff argued that because the policy incorporated Delaware law, including Section 2304, and because GEICO's use of claims processing rules violated Section 2304, GEICO was in breach of its contract. *Id.*, at *4. In holding that the contract did not incorporate Section 2304, the court reasoned:

> [T]he Plaintiff is attempting to reform the contract via the implied covenant of good faith and fair dealing, to include the requirements of 18 *Del. C.* § 2304. For the Court to read into the insurance contract the requirements of § 2304 would require the Court to find that the parties would have agreed to such a term had the parties thought to have negotiated with respect to the matter. Here, as § 2304 contains no private right of action, the Court will not

Policy conflicts with those supposed duties since the Policy is silent on how GEICO will determine what is reasonable and necessary. In the absence of a conflict, the Policy cannot be reformed to require anything more than the duty to pay reasonable and necessary medical expenses.

Focusing on the only relevant contractual obligation in the Policy—GEICO obligation to pay reasonable and necessary medical expenses—GEICO is entitled to judgment as a matter of law. To succeed on their breach of contract claim, which requires breach of a contractual obligation, the Claimants bear the burden to show that GEICO breached that obligation by failing to pay reasonable and necessary medical expenses. Inherent in making that showing is the need to first prove that the Claimants submitted medical expenses are reasonable and necessary. Claimants disavowed proving that their submitted medical expenses were reasonable and necessary. As such, they cannot show that GEICO breached its contractual obligation to pay reasonable and necessary medical expenses. Accordingly, their breach of contract claim necessarily fails.

For the reasons stated above, we affirm the Superior Court order granting judgment in favor of GEICO on the contract claims.

---

read the requirements into the contract without compelling evidence that the parties would have agreed to include the clause if they had negotiated the issue. *Id*.

## 2. The Rules do not constitute a "sublimit, cap, percentage reduction, [o]r similar reduction" in violation of Delaware Insurance Regulation 603

The Claimants also contend that the use of the Rules breaches the PIP Policy by violating Regulation 603. The argument goes like this. The Rules operate as a sublimit, cap, percentage reduction, or similar reduction. Regulation 603 requires that the parties agree in a signed writing to any such sublimit, cap, or reduction, but the parties did not agree to any such sublimit, cap, or reduction. Thus, the Rules violate Regulation 603. Because GEICO is not in compliance with Regulation 603, it cannot permissibly use the Rules to deny PIP benefits. As such, under the Claimants' theory, those claims denied by the use of the Rules are deemed reasonable and necessary, and GEICO has breached the Policy by not paying those claims.[80]

GEICO argues that the Rules are not sublimits because they are not limitations in an insurance policy on the amount of coverage and that the Rules are not percentage reductions because they reduce bills by a dollar amount instead of by a percentage.[81] While the Superior Court agreed with GEICO's conclusion, it held that the Rules are not sublimits, caps, or percentage reductions because they "are not applied in the same way to each of the GEICO Policies."[82] We agree with the

---

[80] Claimants Opening Br. 49-51.
[81] GEICO Answering Br. 35-36.
[82] SJ Op. 25.

20

Superior Court. Regulation 603, which is entitled the "Delaware Motorists Protection Act," was adopted by the Insurance Commissioner pursuant to 21 *Del. C.* § 2118.[83] Section 6.3 of Regulation 603 specifically concerns PIP insurance and states that

> [a]ny insurer, in accordance with filings made with the Insurance Department, may provide for certain deductibles, waiting periods, sublimits, percentage reductions, excess provisions or similar reductions at the election of the owner of a motor vehicle . . . . The owner's election of any reduced benefits described in this section must be made in writing and signed by that owner.[84]

According to the Claimants, the Rules are sublimits or percentage reductions subject to Regulation 603 because they "automatically cap and deny payments."[85] That conclusion is necessary to their success on this claim. We cannot, however, reach this conclusion because the GRR and PMR do not operate as sublimits or percentage requirements as to each GEICO Policy across the board. For example, imagine A and B both get into car accidents and incur medical expenses for treatment X as a result of those accidents. Both A and B have PIP insurance coverage through GEICO. A's medical provider submits a claim to GEICO that charges $300 for treatment X. B's medical provider submits a claim to GEICO that reflects a $280 charge for treatment X. In the geographic region for A's medical provider, the

---

[83] Del. Ins. Reg. 603.
[84] *Id.* at 6.3.
[85] Claimants Opening Br. 50.

eightieth percentile for treatment X is $330. As such, the GRR determines that A's claim of $300 is reasonable because it is below the region's eightieth percentile figure. A's provider receives full payment. In the geographic region for B's medical provider, however, the eightieth percentile for treatment X is $250. Thus, the GRR determines that B's claim of $280 is not reasonable and B's provider receives only $250. While B's provider did not receive the full payment, as it relates to A's provider, the GRR has not acted as a limit because GEICO paid A's medical expense claim in full. Stated differently, in most instances the Rules will not limit payment at all. Thus, we cannot conclude that the Rules operate as a "sublimit, cap, percentage reduction, [o]r similar reduction" when that is not true in every case. As a result, Claimants have failed to show that the Rules are "sublimit[s], cap[s], percentage reduction[s], [o]r similar reduction[s]" that are subject to Regulation 603.

Like the Superior Court, we believe the Rules should be disclosed because they "are basically incorporated into the GEICO Policies under GEICO's interpretation of reasonableness" and in some instances appear to "operate like sublimits or similar reduction."[86] But we also "find[] fault with [Claimants'] breach of contract theory under Delaware Insurance Regulation 603."[87] Thus, we affirm the

---

[86] SJ Op. 25.
[87] *Id.* at 26.

Superior Court's holding that the Claimants' breach of contract theory under Regulation 603 fails.

### B. GEICO's Use of the Rules Does Not Amount to Bad Faith Breach of Contract

The Claimants allege that GEICO has engaged in bad faith breach of contract by relying on the Rules to arbitrarily deny PIP claims.[88] According to the Claimants, GEICO knows that the GRR is not a reasonable method of denying claims because the Rules do not consider factors such as time, skill level of the provider, or the cost of operating the provider's practice.[89] The Claimants also allege that GEICO knows the PMR is not an adequate determinant of the necessity of a treatment because treatises it relies on warn that passive modalities may be necessary after eight weeks and because "GEICO knows from its own medical experts that before denying a claim, it would need to study the entire file and examine the insured."[90] The Claimants contend GEICO is acting in bad faith by denying claims through the use of fully automated rules that either only consider three factors of reasonableness or do not take the claimant's individual circumstance into account.[91]

GEICO responds, and the Superior Court agreed, that GEICO's use of the Rules does not amount to bad faith breach of contract because the Claimants failed

---

[88] Claimants Opening Br. 54-59.
[89] *Id.* at 56.
[90] *Id.* at 57.
[91] *Id.* at 56-58.

to show that GEICO's use of the Rules was without any reasonable justification.[92]

We agree.

Delaware law recognizes that "bad faith[] is actionable where the insured can show that the insurer's denial of benefits was 'clearly without any reasonable justification.'"[93] These claims for bad faith nonpayment are "cognizable under Delaware law as a breach of contractual obligations."[94] "In order to establish 'bad-faith' the plaintiff must show that the insurer's *refusal to honor its contractual obligation* was clearly without any reasonable justification."[95] In other words, an insurer's actions only give rise to a bad faith breach of contract claim if the insurer's actions first breach the contract. Then, the question relevant to whether the insurer's denial was reasonable becomes "whether at the time the insurer denied liability, there existed a set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability."[96] Thus, in order for the Claimants to prevail on this claim, they must first prove that

---

[92] GEICO Answering Br. 38-41; SJ Op. 30 ("The Court finds that Plaintiffs have not carried their burden on bad faith. [T]he Court cannot find that GEICO's use of the Rules was without any reasonable justification.").

[93] *Tackett v. State Farm Fire and Cas. Ins. Co.*, 653 A.2d 254, 264 (Del. 1995) (quoting *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 369 (Del. Super. Ct. 1982)).

[94] *Id.* at 256.

[95] *Casson*, 455 A.2d at 369 (emphasis added).

[96] *Id.*

there was a breach of the contract and next that the breach was "clearly without any reasonable justification."[97] The Claimants have not carried this burden.

As an initial matter, Claimants did not show that there was a breach of contract. Without a showing of an underlying breach, there can be no claim for bad faith breach of contract.

Even if the Claimants could show a breach of contract, they cannot show that GEICO's reliance on the Rules was clearly without any reasonable justification. Section 2118 requires insurers to pay reasonable and necessary medical expenses, but Section 2118 does not dictate how insurers must determine the reasonableness and necessity of claims.[98] At the time GEICO used the Rules to process the Claimants' claims, no Delaware court had ruled on the lawfulness of GEICO's current PIP claims process. Further, it is undisputed that GEICO's current process considers the cost of treatment by other members of the profession in the same geographic location.[99] Delaware case law has articulated that the ordinary and reasonable charges usually made by similarly situated providers should be considered when determining the reasonableness of a charge.[100] Moreover, not only

---

[97] *Id.*

[98] 21 *Del. C.* § 2118(a)(2).

[99] *See* Section I.C.1.

[100] *Anticaglia v. Lynch*, 1992 WL 138983, at *1 (Del. Super. Ct. Mar. 16, 1992); *Watson v. Metro. Prop. & Cas. Ins. Co.*, 2003 WL 22290906, at *1 (Del. Super. Ct. Oct. 2, 2003). In *Anticaglia* and *Watson*, the Superior Court articulated the following factors that it uses to determine the reasonableness of medical expenses: ordinary and reasonable charges

did GEICO rely on medical studies supporting its implementation of the PMR,[101] but its adjusters also review a claimant's medical records and other relevant facts upon a request for re-evaluation.[102] And while the Claimants argue that GEICO's current process does not consider enough factors to actually determine the reasonableness and necessity of a claim, it cannot be said that GEICO's current process is so devoid of any justification as to give rise to a claim of bad faith breach of contract.

As a result, we affirm the Superior Court's ruling that GEICO did not commit bad faith breach of contract.

### C. The Superior Court Erred in Issuing a Declaratory Judgment that the Rules Violate §§ 2118 and 2118B

GEICO challenges the Superior Court's issuance of a declaratory judgment that GEICO's use of the Rules violates 21 *Del. C.* §§ 2118 and 2118B on two grounds: (1) the judiciary lacks the authority to issue such a declaration;[103] and (2) the Claimants failed to present evidence that their medical expenses were reasonable and necessary.[104] We disagree that the judiciary lacks authority to issue a

---

made by similarly situated providers; the nature and difficulty of the treatment; the time devoted to the treatment; the number of treatments rendered; the number of office visits; the inconvenience and expense borne by the provider; the nature of the provider's geographic location, the provider's education level, training, and reputation; and the ability of the insured to pay.

[101] GEICO Opening Br. 12; A861-77, 913-21.
[102] A915.
[103] GEICO Opening Br. 17.
[104] *Id.* at 24-25. GEICO also argues that the Superior Court erred for the following additional four reasons: (1) the Superior Court improperly shifted the burden of proof to GEICO; (2) the Superior Court erred in ruling, *sua sponte*, that GEICO violated Section

declaratory judgment. We agree, however, that the Claimants were required to first show that their medical expenses were reasonable and necessary.

### 1. The judiciary has the authority to issue the claimants' requested declaratory relief

GEICO first attacks the court's authority to issue a declaratory judgment as to Section 2118.[105] According to GEICO, the judiciary does not have the authority to issue such a declaration because *Clark* held that resolution of "a similar request for declaratory relief involving § 2118B . . . is exclusively within the province of the Insurance Commissioner, not the Judiciary."[106] As such, GEICO contends that the Superior Court was required to grant its motion for summary judgment.[107]

The Claimants respond, and the Superior Court held, that *Clark* does not act as a bar to judicial enforcement of insurance law because *Clark* addressed the narrow issue of whether the Court could substitute Section 2118B's statutory remedy for an insurer's failure to pay PIP benefits within the thirty-day timeframe with a declaratory judgment compelling payment within thirty days.[108] In our view, *Clark* does not foreclose review by the courts.

_____

2118B; (3) the Superior Court improperly injected an investigation requirement into Section 2118B; and (4) there are genuine disputes of material fact that preclude the entry of summary judgment. GEICO Opening Br. 24-32, 35-37. Given our reversal of the Superior Court's declaratory judgment, we need not reach these issues.

[105] GEICO Opening Br. at 17-22.

[106] 131 A.3d 806; GEICO Opening Br. 17.

[107] *Id.* at 17-22.

[108] Claimants Opening Br. 24-25; Dismiss Op. 19-20 ("GEICO overstates the holding in *Clark*. The *Clark* court addressed the very narrow issue of whether declaratory judgment

27

In *Clark*, the plaintiffs, Clark and Smith, had PIP insurance coverage through State Farm.[109] After receiving claims under the policy, State Farm began making payments to both plaintiffs.[110] The last of the payments, however, was made more than thirty days after the plaintiffs submitted their claims.[111] Despite being paid Section 2118B's statutorily required interest, the plaintiffs sued State Farm, alleging that State Farm deducted the statutorily required interest amounts from the PIP coverage limits it owed to them.[112] When that allegation proved to be false, the plaintiffs requested leave to amend their complaint to allege that State Farm's delayed payments violated § 2118B.[113] The plaintiffs thus requested declaratory judgment that "State Farm's failure to pay claims within thirty days of its receipt of written requests violated § 2118B(c)."[114] State Farm opposed the motion to amend and filed a motion for summary judgment.[115] After the Superior Court denied the plaintiffs' request and granted State Farm's motion for summary judgment, the plaintiffs appealed to this Court.[116]

concerning [sic] the appropriate remedy for violations of Section 2118B(c) when the legislature had clearly enumerated the available remedies for violation [sic] of Section 2118B(c).").

[109] 131 A.3d at 809.
[110] *Id.*
[111] *Id.*
[112] *Id.*
[113] *Id.* at 809-10.
[114] *Id.* at 810.
[115] *Id.*
[116] *Id.* at 810, 812.

In affirming the Superior Court's decision to deny the plaintiffs' motion for leave to amend, the Court determined that granting the motion would ultimately be futile because the issuance of the plaintiffs' requested remedy would be improper.[117] The Court reached this conclusion for two reasons. First, the statute expressly permits insurers to pay claims outside of the thirty-day window.[118] But doing so triggers interest payments, which State Farm had already paid.[119] The Court reasoned that because the statute permitted the complained of behavior, providing its own consequence for that behavior, and because State Farm already paid the statutory interest, "there was no further relief that could be fashioned for Clark and Smith."[120]

Second, and rooted in the Court's first reason, the Court determined that because the statute already provided its own remedy for not paying PIP claims within thirty days, thus allowing for that situation, issuing the plaintiffs' requested declaratory judgment would provide what the statute does not: a rigid deadline requiring payment within thirty days.[121] Additionally, the Court noted that such an action would replace the legislative remedy with a judicial remedy, causing the

---

[117] *Id.* at 812-13.
[118] *Id.* at 813.
[119] *Id.*
[120] *Id.*
[121] *Id.*

judiciary to "act like an administrative agency and craft regulation[]."[122] The Court concluded that, given the circumstances, this form of judicial regulation would be impermissible.[123]

Here, in arguing that *Clark* held that the judiciary does not have the authority to decide "whether GEICO's use of the Rules is prohibited by [Section] 2118" because such a decision is "exclusively within the province of the Insurance Commissioner," GEICO both mischaracterizes and hyperfocuses on the Court's secondary reasoning regarding impermissible judicial regulation.[124] While GEICO is correct that the Court cautions against judicial regulation, that secondary reason is firmly planted in the ground of the Court's first and primary reason, which is that the statute permits the complained of behavior. In other words, before the Court addresses the topic of judicial regulation, it first acknowledges that the statute allows State Farm's behavior. And therein lies the distinction between *Clark* and the instant case. Unlike in *Clark*, where the statute at issue expressly allowed for the payment of PIP claims thirty days after claims are submitted, here, the statute is silent on the use of tools such as the Rules. As such, a declaration regarding whether GEICO can lawfully use the Rules would not amount to judicial regulation as it would have in *Clark*.

---

[122] *Id.*
[123] *Id.*
[124] GEICO Opening Br. 17.

30

### 2. The Claimants must present evidence that their medical expenses are reasonable and necessary

According to GEICO, the "Plaintiffs spelled out the exact declaratory relief sought in Count III: 'Plaintiffs . . . respectfully request that this [c]ourt enter judgment, as a matter of law, that" GEICO violated Section 2118 and that "GEICO may not lawfully use the [Rules]."[125] GEICO argues that Claimants could not prove that the Rules violated Section 2118 without first showing that GEICO denied or reduced medical expenses that were reasonable and necessary.[126] And because the Claimants disavowed proving the reasonableness and necessity of their medical expenses, summary judgment should have been granted in GEICO's favor.[127]

Claimants respond that it need not prove the reasonableness and necessity of its expenses because it is challenging GEICO's Rules in the abstract as "amount[ing] to an illegitimate, unreasonable sham."[128] The Superior Court agreed.[129] Citing *State Farm Mutual Automobile Insurance Co. v. Spine Care Delaware*, the Superior Court held that this Court indicated that a plaintiff could challenge an insurer's use of computerized rules in the abstract without first proving that its own medical expenses are reasonable and necessary.[130]

---

[125] *Id.* at 24.
[126] *Id.* at 24-25.
[127] *Id.*
[128] Plaintiffs Opening Br. 28-29.
[129] SJ Op. 32-33.
[130] SJ Op. 32-33 (citing 238 A.3d 850 (Del. 2020)).

31

In *State Farm*, the plaintiff, an ambulatory surgery center, submitted PIP claims to State Farm for medical expense reimbursement for minimally invasive spinal injections.[131] These injections were both bilateral and multilevel, requiring "injections on two sides of the spine or on multiple vertebral levels, respectively."[132] As to multilevel spinal injections, State Farm followed a rule, referred to as a multiple payment reduction ("MPR"), of paying the first injection at one hundred percent and the second injection at fifty percent of the first injection.[133] As such, when State Farm received the plaintiff's charges for multi-injection procedures, it unilaterally applied the MPR to those charges, resulting in the plaintiff's second injection being paid at only fifty percent.[134] The plaintiff filed suit, alleging that State Farm's use of the MPR to reduce its charges violated Section 2118 because its charges for multi-injection procedures were reasonable and necessary.[135]

The Court held that the plaintiff had the burden of showing that State Farm was not entitled to apply the MPR to its charges and that the plaintiff must "demonstrate that its charges for the second and subsequent injections are reasonable."[136] When the plaintiff argued that State Farm needed to prove the

---

[131] 238 A.3d at 852.
[132] *Id.*
[133] *Id.* at 852-53.
[134] *Id.*
[135] *Id.* at 853.
[136] *Id.*

reasonableness of the MPR because the case had always related to the propriety of the rule, this Court found that argument unpersuasive because the plaintiff "w[as] not contesting State Farm's MPR in the abstract. Rather, according to the Stipulation, the live, 'ongoing controversy between [the plaintiff] and State Farm' was with respect to whether State Farm could apply its MPRs to [the plaintiff's] fees."[137] Thus, *State Farm* left open the question that we answer today: whether a PIP claimant may challenge an insurer's PIP claims process in the abstract without first proving that its medical expenses were reasonable and necessary. We hold that it may not.

Section 2118(a)(2) only requires insurers to "[c]ompensat[e] [] injured persons for reasonable and necessary expenses" for medical services.[138] In other words, the insurer's obligation under the statute is the payment of reasonable and necessary medical expenses.[139] Thus, to show a violation of the statute, the Claimants must prove that GEICO did not fulfill its statutory obligation. That showing, however, requires Claimants to prove that their medical expenses are reasonable and necessary. Stated differently, the validity of a PIP claim alleging an

---

[137] *Id.* at 861-62.

[138] 21 *Del. C.* § 2118(a)(2)a.

[139] *See Ramsey v. State Farm Mut. Ins. Co.*, 2005 WL 528846, at *1 (Del. 2005) ("The PIP statute provides recovery only for 'reasonable and necessary' expenses. In order to satisfy that requirement, Ramsey had to establish that her lost wages were unavoidable. Since she offered no evidence on that point, she failed to establish her entitlement to PIP benefits.").

insurer's violation of Section 2118(a)(2) hinges on whether the expenses at issue are reasonable and necessary and, absent such a showing, that plaintiff cannot prevail.

Here, because Claimants disavowed proof of the reasonableness and necessity of their medical expenses, their claim fails. If Claimants prove that their expenses are reasonable and necessary, GEICO's nonpayment of those expenses would be a statutory violation, and Claimants would be entitled to payment without reduction under the Rules.

For this reason, we hold that the Superior Court's issuance of the Claimants' requested declaratory judgment was improper.

## IV.    CONCLUSION

For the foregoing reasons, the Court AFFIRMS in part and REVERSES in part the Superior Court's judgment.